EVERGREEN INTERNATIONAL SERVICES CORP., PLAINTIFF-APPELLANT, v. WALLANT INTERNATIONAL TRADE, INC. AND JOHN DOE I THROUGH JOHN DOE X, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted October 17, 1988—Decided November 7, 1988.

Before Judges PETRELLA and GRUCCIO.

*Leonard F. Rappa,* attorney for appellant (*Leonard F. Rappa* on the letter brief).

*Bross, Strickland, Cary & Grossman,* attorneys for respondents (*Sheldon Bross* on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

Evergreen International Services Corp. (Evergreen) appeals from an order of the Chancery Division declaring that Wallant International Trade, Inc. (Wallant), a warehouse facility, had perfected a warehouseman's lien under *N.J.S.A.* 12A:7–209 for $48,728 based on bills and invoices which it had presented.

Evergreen contends that no valid lien was perfected because Wallant failed to produce proper warehouse receipts which conformed with the statutory requirements. It also argues that the chancery judge's decision is not supported by adequate findings of fact.

The parties agreed below that the resolution of an order to show cause filed by Evergreen in the Chancery Division, Union County would be dispositive of their dispute. The facts are not complicated and are essentially undisputed.

On May 9, 1986 Evergreen entered into an agreement with Wallant to store merchandise of Evergreen's customers at Wallant's warehouse in Roselle, New Jersey. The agreement set out warehouse charges essentially by the number of pallets delivered and removed. In early 1987 Evergreen stopped its monthly payments to Wallant, alleging that there was $28,458.68 of inventory missing and that it was owed $3,077 in demurrage costs and overcharges. As of May 1987 Evergreen had approximately $600,000 in food items stored at Wallant's facility.

Wallant contended that Evergreen owed Wallant $48,728 based on its bills and invoices. Evergreen conceded that it

withheld approximately $30,000 in monthly payments, but claimed entitlement to an offset for the missing merchandise. Evergreen also argued that the invoices and bills submitted by Wallant in support of its claim of a warehouseman's lien did not constitute warehouse receipts under *N.J.S.A.* 12A:7–202 because these documents did not sufficiently describe the warehoused goods as statutorily required [1] and were denominated as bills and invoices rather than as "warehouse receipts."

*N.J.S.A.* 12A:7–202 provides:

(1) A warehouse receipt need not be in any particular form.

(2) Unless a warehouse receipt embodies within its written or printed terms each of the following, the warehouseman is liable for damages caused by the omission to a person injured thereby:

(a) the location of the warehouse where the goods are stored;

(b) the date of issue of the receipt;

(c) the consecutive number of the receipt;

(d) a statement whether the goods received will be delivered to the bearer, to a specified person, or to a specified person or his order;

(e) the rate of storage and handling charges, except that where goods are stored under a field warehousing arrangement a statement of that fact is sufficient on a non-negotiable receipt;

(f) a description of the goods or of the packages containing them;

(g) the signature of the warehouseman, which may be made by his authorized agent;

(h) if the receipt is issued for goods of which the warehouseman is owner, either solely or jointly or in common with others, the fact of such ownership; and

(i) a statement of the amount of advances made and of liabilities incurred for which the warehouseman claims a lien or security interest (12A:7–209). If the precise amount of such advances made or of such liabilities incurred is, at the time of the issue of the receipt, unknown to the warehouseman or to his agent who issues it, a statement of the fact that advances have been made or liabilities incurred and the purpose thereof is sufficient.

---

[1] Evergreen challenges the adequacy of the description of the goods. In addition, it argues that they contain no signature of Wallant or its authorized agent; and do not contain a statement conforming with *N.J.S.A.* 12A:7–202(2)(d). Evergreen also contends that although not specifically required as an essential term, there is no evidence that the bills are accurate. As to the latter argument we note that Evergreen conceded withholding about $30,000 in monthly payments. We are satisfied that there was no meritorious challenge to the accuracy of the records.

(3) A warehouseman may insert in his receipt any other terms which are not contrary to the provisions of this Act and do not impair his obligation of delivery (12A:7-403) or his duty of care (12A:7-204). Any contrary provisions shall be ineffective.

From the statute it is clear that the failure to include certain provisions in the warehouse receipt may result in exposing the warehouseman to liability for damages to an injured person. However, the statute does not say that the lack of any specific term or terms negatively affects a lien claimed under *N.J.S.A.* 12A:7-209. This cited statute provides in subsection (1):

(1) A warehouseman has a lien against the bailor on the goods covered by a warehouse receipt or on the proceeds thereof in his possession for charges for storage or transportation (including demurrage and terminal charges), insurance, labor, or charges present or future in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law. If the person on whose account the goods are held is liable for like charges or expenses in relation to other goods whenever deposited and it is stated in the receipt that a lien is claimed for charges and expenses in relation to other goods, the warehouseman also has a lien against him for such goods, the warehouseman also has a lien against him for such charges and expenses whether or not the other goods have been delivered by the warehouseman. But against a person to whom a negotiable warehouse receipt is duly negotiated a warehouseman's lien is limited to charges in an amount or at a rate specified on the receipt or if no charges are so specified then to a reasonable charge for storage of the goods covered by the receipt subsequent to the date of the receipt. [*N.J.S.A.* 12A:7-209(1)].

The current provisions of the New Jersey Uniform Commercial Code were preceded by and based upon the terms of the Uniform Warehouse Receipts Act (UWRA) (*N.J.S.A.* 57:1-4 *et seq.*) (now repealed). See New Jersey Study Comments to *N.J.S.A.* 12A:7-202 and *N.J.S.A.* 12A:7-209. For purposes of this opinion we consider the provisions substantially comparable. While the present Code section specifying the form of a warehouseman's lien has yet to be interpreted by a New Jersey court, the prior law as stated in sections two and three of the UWRA has been examined to a limited extent.

In *New Jersey Title Guaranty & Trust Co. v. Rector,* 76 *N.J.Eq.* 587 (E. & A. 1910), the Court of Errors and Appeals, reversing the chancery court's strict interpretation of sections two and three of the UWRA, recognized the remedial character

of the statute and observed that its provisions did not render a receipt void for failure to include a specified statutory term. Rather, various penalties were provided. The court concluded that the terms recited were for the benefit of third persons or innocent holders, and that omission of some of the statute's requirements did not destroy the character of the writing as a warehouseman's receipt. *Rector, supra* 76 *N.J.Eq.* at 590–591.

The *Rector* court also established requisite components of a sufficient warehouseman's receipt which would allow a warehouseman to interplead against a bailor and adverse claimants in order to settle their respective rights to the bailed property. The warehouseman must provide the bailor with a memorandum which indicates that the property described therein was received from the bailor for safekeeping and in the ordinary course of business. *Rector, supra* 96 *N.J.Eq.* at 591. It was held that this receipt need not include all the terms set out in section two of the UWRA. *Ibid.*

In *Maxwell v. Winans,* 96 *N.J.Eq.* 178 (Ch.1924), a warehouseman brought an interpleader action against various defendants, including one defendant who had stored goods at the warehouse. The chancery judge, dismissing the matter on various grounds, found that the warehouseman had failed to comply with the requirements set forth in *Rector, supra* 76 *N.J.Eq.* at 591. *Maxwell, supra* 96 *N.J.Eq.* at 181–182.

As noted, *N.J.S.A.* 12A:7–202 does not specifically provide that receipts not conforming fully with its requirements are invalid. Moreover, *N.J.S.A.* 12A:7–401(a) provides:

... obligations imposed by this Chapter [Article 7] on an issuer apply to a document of title regardless of the fact that

(a) the document may not comply with the requirements of this chapter [Article 7] or of any other law or regulation regarding its issue, form or content; ....

Under *N.J.S.A.* 12A:1–201(15), "documents of title," including warehouse receipts, "must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identical mass." The provisions of the Code, particularly when

sections 12A:7–202 and 12A:7–401(a) are considered, lead to the conclusion that neither a warehouse receipt nor a warehouseman's lien is invalidated by the omission of some statutorily required components where the receipt is otherwise sufficient to identify the parties, the goods and their location.

We conclude that the primary terms of such a receipt as set forth in *Rector, supra* 76 *N.J.Eq.* at 591 were included in the documents produced by Wallant. The invoices disclosed the name of the warehouseman and the bailor was identified. The receipts also sufficiently described the property that was received by Wallant, including properly identifying mixed goods.

Accordingly, Wallant was entitled to enforce a lien on goods deposited by Evergreen. The judge below permitted Evergreen to select the goods to which the lien would apply with their value satisfying the amount of the lien. There was no requirement that Wallant prove the validity of its receipts. Nor was it necessary for the trial judge to make findings regarding the reasonableness of the warehouse charges contained in the valid warehouse receipts.

AFFIRMED.